**V. E. BARNES, Commissioner of Department of Economic Security, etc., Appellant,**

v.

**Dolly HEMBREE, Appellee.**

Court of Appeals of Kentucky.

Oct. 7, 1960.

Paul E. Tierney, Samuel H. Cole, Frankfort, for appellant.

Robert R. R. Boone, Pineville, for appellee.

WILLIAMS, Judge.

In June 1958, appellee Dolly Hembree made application to the Department of Economic Security, Division of Public Assistance, for aid for her infant daughter Joyce, maintaining she was a needy child as defined by KRS 205.010(5). That statute states:

"(5) 'Needy child' means a child under the age of eighteen who has been deprived of parental support by reason of the death, absence or incapacity of a parent, and who is unable to provide for himself and who does not otherwise have provided for him a subsistence compatible with decency and health."

The appellee claimed that her husband, the father of the infant child, was incapacitated to the extent that he could not perform work and provide support for his daughter. The application was denied, a hearing was had, and the matter was finally appealed to the appeal board, as provided by KRS 205.-230. That board, having considered the evidence, entered an order denying appellee's application. The matter was then taken to the Bell Circuit Court where the order of the appeal board was reversed and judgment entered directing that appellee be given public assistance for the support of her needy child. The Commissioner of Economic Security has moved for an appeal from that judgment.

Joe Hembree last had regular employment in 1937. Since that time he possibly has performed a little work, but has had no income to speak of. He states that he has had trouble with his stomach and with his heart, and that he has suffered from shortness of breath. Five doctors examined him and the report of each is in the record. Dr. Adam Stacy, Jr., examined him in 1957. His diagnosis and recommendation was that Hembree had a rapid heart rate and was able to do light work. Dr. Arch M. Carr examined him in 1958 and his diagnosis was (1) malingering, (2) hypertension, mild, (3) defective teeth. His recommendation was "Encourage this individual to return to work as soon as possible." Dr. Thomas J. Vecchio examined him in 1959. His diagnosis was (1) hypertension, benign, (2) pulmonary emphysema. He estimated the degree of incapacity to be not very severe. Dr. Joe E. Acker examined him in 1957 and found no organic heart disease and suggested no treatment. On the other hand, Dr. S. Imprescia examined him in 1958 and found that he was suffering from arteriosclerotic heart disease, and that

he was totally disabled to follow gainful employment entailing work of any kind.

The Bell Circuit Court took judicial notice of the fact that Bell County is within the national disaster area concerning surplus of labor. It was further found that the medical reports indicate Joe Hembree is incapacitated to some degree. The court then coupled the partial incapacity with the fact that there is a shortage of work in the area and determined that Joe Hembree was incapacitated, as the term has been defined by this Court. The court undoubtedly was relying on the opinion in Barnes v. Neal, Ky., 287 S.W.2d 419, wherein it was stated that needy children of a parent who is so handicapped physically that he could not obtain reasonably accessible employment in the community or county in which he usually resides will qualify for state aid. However, we also said in Barnes v. Turner, Ky., 280 S.W.2d 185, 187:

"* * * General conditions of unemployment do not furnish a basis for aid; the test is employability, not the availability of employment. We think the statute contemplates that the parent must assume the burden of supporting his children if he is physically capable of so doing through any kind of legitimate endeavor, and that he may not pass the burden to the state merely because there are some limitations upon his ability to compete freely in the labor market."

Had the circuit court been in position to make a finding of fact such as he attempted to do in this instance, we would not say that such finding is clearly erroneous. That he does not possess such authority, however, has long been decided, and, as a matter of fact, is very clearly stated in Barnes v. Neal, Ky., 287 S.W.2d 419, 421, hereinbefore cited. There we said:

"We held in Barnes v. Turner, Ky., 280 S.W.2d 185, that under KRS 205.-230(3, 4), the circuit court must try this character of case on the record made before the Board and if there is any evidence of probative value to support the finding of the Board, the courts are bound thereby and may not disturb such finding. We conclude this to be the proper interpretation of the statute. The Board has trained personnel who make a full and complete investigation of all family conditions and the surrounding circumstances. Manifestly, the Board is in a much better position than are the courts to determine whether the parents are incapacitated from supporting their children."

Here the board had before it the testimony of four doctors, each of whom testified by his medical report that Joe Hembree was not totally incapacitated from work. In addition, the board knew the family conditions and other surrounding circumstances. In view of these facts, it is apparent that the board had sufficient evidence of a probative nature to sustain its findings. Under the circumstances, the circuit court should have sustained the finding of the board.

The motion for an appeal is granted, and the judgment is reversed.