# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

## 2019-SC-000160-WC

ARTHUR MONKS                            APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                 CASE NO. 2018-CA-001057-WC
WORKERS' COMPENSATION BOARD NO. 16-WC-72763

JACK COOPER TRANSPORT,             APPELLEES
MONICA RICE-SMITH, ADMINISTRATIVE
LAW JUDGE, AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Arthur Monks asserts that the Administrative Law Judge[1] who considered his claim committed flagrant error in assessing the evidence, resulting in gross injustice. Monks requests that we reverse the Court of Appeals, which affirmed the Worker's Compensation Board[2] having upheld the ALJ's findings of no impairment and that we remand the case to the ALJ with direction to enter an

---

[1] Hereafter ALJ.

[2] Hereafter Board.

award for Monks. Having reviewed the record and applicable law, we affirm the Court of Appeals.

## I. BACKGROUND

Arthur Monks is a 73-year-old male who has a high school diploma and some college education. Prior to beginning work for the Appellee, Jack Cooper Transport, in August 2016, Monks served six years in the Army Reserves and spent much of his career as a truck driver. Monks retired as a member of Union Local Teamsters 89 and Yellow Freight in 2001. Between 2001 to 2016 Monks did not work and was receiving Teamsters' retirement and Social Security benefits.

Monks began working for Jack Cooper Transport in August of 2016. On August 14, 2016, during his duties as a transport driver, Monks was readying to get into a truck, when a fellow worker backed a Ford F-250 truck over his left foot. The impact caused Monks to fall to the ground and the truck ran directly over his midsection and hips.

An ambulance was called to the facility and Monks was transported to the University of Louisville Hospital Emergency Room. X-rays were taken of Monks' hips and lower left leg. Monks was kept in the hospital overnight, administered pain medications, given crutches, and was released the following day. After being released Monks contacted his daughter, who worked in the office of Dr. Andrew DeGruccio an Orthopedic Surgeon, because he believed he needed an x-ray of his left foot. Monks was able to get an appointment with Dr. DeGruccio the following day, and at the office visit an x-ray was performed

2

on his left foot. After reviewing the x-ray Dr. DeGruccio diagnosed Monks with a fracture of the left foot; his fifth metatarsal, or "little toe" was broken and displaced. After restoring the position of the bones, Dr. DeGruccio placed Monks in a boot, ordered him to not bear weight on his foot, and prescribed a walker and Roller Aid.

During his treatment with Dr. DeGruccio Monks was ordered to complete physical therapy. Monks was treated by Dr. DeGruccio from August 2016 until he was released in February 2017, when Monks reached Maximum Medical Improvement ("MMI"). After the February appointment, Dr. DeGruccio released him to return to work without restrictions, however Monks never returned to work. Monks received temporary total disability benefits in the amount of $16,734.73 from August 15, 2016 through February 8, 2017, at which point he was documented as having reached MMI.

On April 28, 2017, Dr. DeGruccio prepared a narrative report for the Appellee. In this report Monks was assigned a 0% impairment rating to the body as a whole, based upon the healed left foot fracture and resolved abrasions and contusions. Dr. DeGruccio made note of no signs of range of motion loss and noted Monks' pain was consistent with sciatica from a preexisting degenerative condition. In this report Dr. DeGruccio also addressed an Independent Medical Examination completed by Dr. Barefoot and reaffirmed his original opinion that Monks had 0% impairment due to the injuries.

In August 2017, Monks returned to Dr. DeGruccio complaining of continued hip pain. Dr. DeGruccio ordered additional x-rays and completed an

3

examination of Monks' hip. Dr. DeGruccio determined that the x-rays read as normal and there were no signs of tenderness around the hip areas, thus specifically ruling out Dr. Barefoot's diagnosis of trochanteric bursitis. After being released by Dr. DeGruccio, Monks attempted to get a second opinion from a Dr. Patel. However, Appellee denied the request and refused to pay for it.

Monks testified that prior to the injury he had no issues with his left foot, left ankle, or either hip. He testified that since the injury he has the following limitations: 1) no feeling in the right side of his left ankle; 2) pain in his foot where it was broken; 3) inability to walk long distances like he had previously been able to; 4) inability to lie on his right side; 5) severe right hip pain; and 6) difficulty sleeping. He further testified he suffered from limited range of motion; he had trouble getting in and out of cars and had to lift his leg to do so; that his left hip pain was greater than his right; and he had swelling in his left leg. Monks additionally testified that he cannot return to his original position as he is unable to climb in and out of the truck as required after his injuries.

Monks filed an application for resolution with the Department of Workers' Claims. His claim was assigned to ALJ Rice-Smith. Following discovery, a benefits review conference, and file hearing, the ALJ entered an opinion, order and award. The ALJ determined that Monks did not satisfy his burden of proving he sustained a permanent work-related injury.

4

The ALJ explained that Dr. DeGruccio used reasonable medical evidence to support his conclusions. At that time Monks filed a motion to reconsider, which the ALJ denied, finding no errors. Monks then appealed to the Workers' Compensation Board claiming that the ALJ abused its discretion and made erroneous findings in dismissing his claim. The Board affirmed the ALJ's order. Monks then appealed from an opinion of the Workers' Compensation Board affirming the decision of the ALJ denying he suffered any permanent work-related injuries. After reviewing the record and decisions of the Board and ALJ, the Court of Appeals affirmed. Monks now seeks for this Court to review whether the Court of Appeals erred in affirming the Board and ALJ's decisions.

## II. STANDARD OF REVIEW

Where, as here, the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding."[3] "On appeal our standard of review of a decision of the Worker's Compensation Board 'is to correct the Board only where the...Court perceives the Board has overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Pike Cty. Bd. Of Educ. v. Mills.*[4]

---

[3] *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005) (citing *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986)).

[4] 260 S.W.3d 366, 368 (Ky. App. 2008) (citing *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992)).

This Court has consistently held that it is within the broad discretion of the ALJ "to believe part of the evidence and disbelieve other parts of the evidence whether it came from the same witness or the same adversary party's total proof." *Caudill v. Maloney's Discount Stores.*[5] The ALJ is the sole fact finder in all workers' compensation claims.[6] "KRS 342.285 designates the ALJ as finder of fact and has been construed to mean that the fact-finder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence." *Bowerman v. Black Equipment Co.*[7] An ALJ abuses its discretion when the decision is "arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id.*

"It has long been the rule that the claimant bears the burden of proof and the risk of nonpersuasion before the fact-finder with regard to every element of a workers' compensation claim." *Magic Coal Co. v. Fox.*[8] Here, the claimant had the burden of persuasion before the ALJ, they are the sole fact-finder as previously discussed, and it is up to the claimant to prove every element of their claim.

---

[5] 560 S.W.2d 15, 16 (Ky. 1977).

[6] Kentucky Revised Statute (KRS) 342.285(1).

[7] 297 S.W.3d 858, 866 (Ky. App. 2009).

[8] 19 S.W.3d 88, 96 (Ky. 2000).

# III. ANALYSIS

We must determine whether the Board was correct in affirming the ALJ's finding. This Court has consistently held that if there is substantial evidence in the record to support the ALJ's findings, the findings will be upheld, even if there is conflicting evidence in the record. *Kentucky Comm'n on Human Rights v. Fraser.*[9] Here, we see that the ALJ thoroughly reviewed both Dr. DeGruccio and Dr. Barefoot's medical records, narrative reports, and supplemental narrative reports regarding Monks impairment ratings. The ALJ weighed the credibility of not only both medical opinions, but all the evidence presented by both parties. In *Magic Coal Co.*[10], this Court opined that the ALJ may reject any testimony and believe or disbelieve various parts of the evidence.

The claimant bears the burden to persuade the ALJ that he suffered from permanent work-related injuries.[11] In the present case, the defense was able to present enough substantial evidence to cause the claim to fail before the ALJ. However, Monks contends the Board erred in affirming the ALJ's decision to find no permanent work-related injuries and he must therefore show that the ALJ's findings were clearly erroneous to warrant reversal.[12] An agency's

---

[9] 625 S.W.2d 852, 856 (Ky. 1981).

[10] 19 S.W.3d at 96.

[11] *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984).

[12] *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

findings are clearly erroneous if arbitrary or unsupported by substantial evidence in the record.[13]

Monks continues to make the argument that Dr. DeGruccio's opinion that he suffered no permanent injury was not medically sound and implies that Dr. DeGruccio prepared disingenuous narrative reports for hire by the Appellee. However, Monk has not pointed to any abuse of discretion, but rather only continues to claim that the ALJ's decision was erroneous because she found the less favorable medical opinion more credible.

In rebuttal of Dr. DeGruccio's narrative, Monks relies on Dr. Barefoot, who indicated that Monks had a twenty-five percent whole person impairment based upon range of motion, diminished sensation and swelling of the left ankle and trochanteric bursitis of the right hip. Dr. Barefoot apportioned three percent to the right hip impairment and the remaining twenty-three percent to the left ankle. Dr. Barefoot's, August 29, 2017, narrative report indicated that the injuries were work-related and stated that Monks could not return to his prior role with Appellant. Monks continues to rely on Dr. Barefoot's claim that he could not understand how Dr. DeGruccio examined the same patient due to the extreme differences in their opinions.

This difference of opinions is Monks' key argument to try and establish that the ALJ made critical error in her decision to deny permanent work-related injury benefits. Monks contends that Dr. DeGruccio's opinion is "in

---

[13] *Ky. Comm'n on Human Rights*, 625 S.W.2d at 856.

direct contradiction to reality" and that a reasonable person could not find that being driven over by a large pickup truck would only result in superficial bruising. Additionally, Monks argues that on the date which Dr. DeGruccio documented he was able to return to unrestricted work the record also indicated an expected outcome of "guarded recovery." Monks believes that this change in opinion, along with a lack of sufficient medical evidence to support claimed pre-existing injuries bolsters his claim that the ALJ's decision was clearly erroneous.

The Board's opinion affirming the ALJ thoroughly examined the record, including the pre-existing conditions observed by Dr. DeGruccio. The narrative report, dated October 3, 2017, provided by Dr. DeGruccio directly indicated that in support of his opinion he had reviewed a CT scan performed at the Emergency Room. Upon reviewing Monks' scans Dr. DeGruccio documented a "significant amount of degenerative changes" regarding Monks back and hips with "no evidence of acute changes on the CT scan." The Board further explained Dr. DeGruccio's findings:

> [Dr. DeGruccio] also stated a CT scan performed on the day of the accident demonstrated a significant amount of degenerative changes throughout the spine with multiple osteophytes, moderate degenerative changes in both hips, and significant spinal stenosis. *It did not show evidence of acute changes.* Dr. DeGruccio opined Monks had pre-existing, active impairment for the lumbar spinal stenosis of 8%.
> Dr. DeGruccio emphasized a right hip x-ray was read as normal at the August 31, 2017 office visit, and there was no tenderness around the hip on examination. He also found no signs of greater trochanteric bursitis or range of motion loss at the

9

hip. Dr. DeGruccio stated Monk indicated he felt pain deep in the greater sciatic notch consistent with sciatica.[14]

However, in addition to the contrasting views provided by Doctors DeGruccio and Barefoot, the ALJ outlined Monks' inconsistencies as well:

Monks testified in his deposition that he has no pain in his left hip, however at the hearing Monks indicated he has pain in both hips, worse in the right. He

testified at the hearing Dr. DeGruccio did not know anything about his hips, however he was adamant in his deposition that he reported pain to Dr. DeGruccio at every visit. In the hearing, he initially testified Dr. DeGruccio did not treat his hips, however after questioning admitted Dr. DeGruccio x-rayed and examined his right hip. Monks also testified that he has difficulty getting in and out of a car, specifically testifying that he has to put his leg in and out of the car. The surveillance video shows Monks getting in and out of a car on numerous occasions. There was never an instance of Monks having to place his leg in and out of a car. The video shows him, although doing so slowly, simply getting in and out of the car normally. Monks does not seem to have any difficulty walking around the car numerous times to dry it, nor does he seem to have any difficulty bending to wipe it dry.[15]

The ALJ has the authority to thoroughly analyze each individual claim and find one opinion more persuasive than the other. Here, the ALJ and Board thoroughly reviewed this case, and we are unable to find any abuse of discretion. "If the reviewing court concludes the rule of law was correctly

---

[14] Board's Op., 9-10, June 15, 2018. (emphasis added).

[15] ALJ Op., 14-15, February 2, 2018.

applied to facts supported by substantial evidence, the final order of the agency must be affirmed." *Kentucky Unemployment Ins. Comm'n v. Cecil.*[16]

## IV. CONCLUSION

Having reviewed the record, we find no error. The ALJ's factual findings were supported by substantial and credible evidence, and the ALJ's conclusion was the result of an appropriate application of the authorities to those facts. The Workers' Compensation Board and Court of Appeals therefore did not err in affirming the ALJ's decision. We likewise affirm.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J.; sitting. All concur. Nickell, J.; not sitting.

COUNSEL FOR APPELLANT:

Nicholas Murphy
Louisville, Kentucky

COUNSEL FOR APPELLEE:

Charles Patrick Fulton
Louisville, Kentucky

Thomas Michael Edelen
Louisville, Kentucky

---

[16] 381 S.W.3d 238, 246 (Ky. 2012) (citing *Brown Hotel Co. v. Edwards,* 365 S.W.2d 299 (Ky. 1962)).